IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JOE CRAIG McKOWN AND**
**SHANNA BURT,**

           Appellants,

vs.                                 **No. CIV 02-0743 LCS/KBM**

**UNITED STATES DEPARTMENT**
**OF AGRICULTURE, FARM SERVICE**
**AGENCY, NANCY L. SMITH, Acting**
**Director,**

           Appellees.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is an action for judicial review of a final decision by the Farm Service Agency (FSA) of the United States Department of Agriculture ("USDA") finding Appellants ineligible for Marketing Loss Assistance Program ("MLAP") payments under Production Flexibility Contracts ("PFCs") for Farm Serial Number 1033 and Farm Serial Number 1034, located in Lea County, New Mexico. Review is governed by the Administrative Procedure Act (APA), 5 U. S. C. § 701, *et seq*. Having considered the administrative record, briefs, relevant law, and being otherwise fully advised, I find that the USDA's final decision should be affirmed.

**I.    Background**

The Federal Agriculture Improvement and Reform Act of 1996, Pub.L. No. 104-127, allowed growers of wheat, corn, barley, grain sorghum, oats, upland cotton and rice crop in 1995, to enter into Production Flexibility Contracts with the Commodity Credit Corporation ("CCC") for the years 1996 through 2002. 7 C.F.R. § 1412.101. Farmers who participated in the program were required to fully comply with the terms of the PFCs and the governing regulations. *Id*. In return, the farmers

received PFC payments for each fiscal year that they participated in the program. *Id*.

The Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 113 Stat. 1135 (Oct. 22, 1999) directed the Farm Service Agency ("FSA") to issue market loss assistance program (MLAP) payments to farmers who were eligible for final PFC payments for fiscal year 1999. *Id*. The amount of assistance made available to farmers under this Act was proportionate to the amount of the PFC payment received by that farmer for fiscal year 1999. *Id*.

**II.     Administrative Record.**

Joe McKown, Sr. is the father of Shanna Burt and Joe Craig McKown ("Mr. McKown"). (Case Record for NAD Case No. 2001W001289 ("McKown C.R.") at 4.) On December 10, 1998, Ms. Burt signed a 1999 PFC for Farm Serial No. 1033 in the amount of $10,589.00. (Case Record for NAD Case No. 2001W001307 ("Burt C.R.") at 116-123.) On January 15, 1999, Joe McKown, Sr. signed a 1999 PFC for Farm Serial No. 1034 in the amount of $11,181.00 on behalf of Mr. McKown. (McKown C.R. at 37.) On January 22, 1999, Mr. McKown signed a duplicate 1999 PFC for Farm Serial No. 1034. (McKown C.R. at 32-38.)

The PFC forms signed by Appellants state that the terms and conditions of the PFC are contained in the CCC-478 Appendix. (McKown C.R. at 34; Burt C.R. at 119.) The CCC-478 Appendix warns that the PFC shall be terminated with respect to a producer or owner whose interest in the crops or land on the farm is transferred. (McKown C.R. at 81; Burt C.R. at 171.) By signing the PFCs, Appellants acknowledged that they had received copies of the CCC-478 Appendix. (McKown C.R. at 34; Burt C.R. at 119.)

Ms. Burt filed a Chapter 7 bankruptcy petition on April 12, 1999, listing a $16,399.00 crop

loss disaster assistance program payment (CLDAP) as personal property on Schedule B, and claiming $13,970.00 of this payment as exempt on Schedule C pursuant to 11 U.S.C. §522(d)(5). (McKown C.R. at 280; Burt C.R. at 248-249.) On May 5, 1999, the Lea County FSA Office ("County Office") notified the New Mexico State FSA Office ("State Office") that Ms. Burt had filed for bankruptcy, that she had a $170,405.56 FSA Farm Loan, $34,538.00 in CLDAP payments assigned to Joe McKown, Sr., that she had been terminated from the Conservation Reserve Program ("CRP") for program violations, and that she owed $3,193.82 for the CRP violations. (McKown C.R. at 252.) Ms. Burt received her bankruptcy discharge on July 26, 1999. (Burt C.R. at 109.)

Mr. McKown filed a Chapter 7 bankruptcy petition on March 23, 1999, and claimed a crop loss payment in an unknown amount as exempt under 11 U.S.C. §522(d)(5). (McKown C.R. at 13). On May 3, 1999, the County Office notified the State Office that Mr. McKown had filed for bankruptcy, that he was eligible for a CLDAP payment in the amount of $22,532.00, and that his FSA Farm Loan was delinquent. (McKown C.R. at 21.) The Bankruptcy Trustee filed a Notice of Abandonment in the McKown bankruptcy on May 26, 1999. (McKown C.R. at 13.) On August 2, 1999, Mr. McKown received his bankruptcy discharge. (*Id.*) On August 10, 1999, the Notice of Discharge from the McKown bankruptcy was filed with the County Office. (McKown C.R. at 5.)

In response to Appellant's inquiries, County Office employee LaVerne Standifer told Appellants that in order to maintain their PFC eligibility, Appellants needed to submit acreage reports to the County Office. (McKown C.R. at 123.) On July 1, 1999, Ms. Burt submitted an acreage report for Farm No. 1033, and on July 14, 1999, Joe McKown, Sr., on behalf of Mr. McKown, submitted an acreage report for Farm No. 1034 to the County Office. (McKown C.R. at 30-33; 269-270.)

3

In an August 27, 1999 letter to Regional Agricultural Commodity Chiefs, USDA Regional Attorney Lawrence M. Jakub, explained that PFC payments could be made to producers who filed bankruptcy petitions subject to certain conditions. (McKown C.R. at 71.) In cases where the producers filed under Chapter 7, the program participant was required to reaffirm the contract after filing, but before discharge. (*Id.*) After discharge, the program participant could sign a successor in interest contract and regain eligibility. (*Id.*) The cut-off date for signatures on valid PFC contracts for fiscal year 1999 was August 16, 1999. (McKown C.R. at 72.) If a program participant had not reaffirmed the original PFC contract or had not executed a valid successor in interest contract prior to that date, the participant would not be eligible for future payments for fiscal year 1999. (*Id.*)

On August 16, 1999, Lea County State Bank was appointed as Receiver for any government payments made in connection with the Burt farm (Farm No. 1033). (R. at 96-98.) On September 13, 1999, Ms. Standifer wrote to Salomon E. Ramirez, State Executive Director of the FSA, stating that the CLDAP payments and the final PFC payment for Mr. McKown were being held by the County Office. (McKown C.R. at 17.)

On September 14, 1999, Mr. Jakub advised Mr. Ramirez that no further payments should be made on Ms. Burt's PFC contract because it had not been reaffirmed during the bankruptcy and that a PFC payment that had already been made would constitute pre-petition debt and could be offset against Ms. Burt's FSA loan. (McKown C.R. at 147-148; Burt C.R. at 85.) On September 15, 1999, an FSA employee noted that no 1999 payment was due to Mr. McKown because he had not reaffirmed his PFC or filed a succession in interest contract. (McKown C.R. at 27.)

On September 21, 1999, Mr. Jakub advised Mr. Ramirez that the PFC payment to Mr. McKown would constitute post-petition assets of his bankruptcy estate, and that the FSA would not

4

be able to offset this amount against Mr. McKown's pre-petition loans. (McKown C.R. at 15-16.) Mr. Jakub further stated that if the PFC payment had not been claimed as an exemption, the payment might be an asset of the bankruptcy estate. (*Id.*) Mr. Jakub suggested that Mr. Ramirez contact the bankruptcy trustee for more information about the McKown bankruptcy. (*Id.*)

On September 28, 1999, Ms. Standifer withheld a PFC payment from Mr. McKown. (McKown C.R. at 143.) The same day, Mr. McKown provided copies of his bankruptcy schedules to the County Office, which listed a crop loss payment in an unknown amount as an exempt asset. (McKown C.R. at 245.) On September 30, 1999, a foreclosure judgment was issued on the Burt farm. (R. at 96.) On October 27, 1999, an MLA payment in the amount of $10,598.00 for the Burt farm was deposited into Ms. Burt's account at Lea County State Bank. (McKown C.R. at 194; Burt C.R. at 99.)

On November 4, 1999, ownership of the Burt farm was transferred to Lea County State Bank through a Special Master's Sale. (McKown C.R. at 158; Burt C.R. at 89-95.) On November 23, 1999, PFC payments to Mr. McKown were cancelled because no succession was filed for payment after bankruptcy. (McKown C.R. at 25.) On November 23, 1999, the FSA notified Ms. Burt that she had been overpaid $10,598.00. (McKown C.R. at 197; Burt C.R. at 52; 75-82.)

On December 22, 1999, Ms. Burt filed a request for reconsideration with the County Committee. (Burt C.R. at 67.) Ms. Burt met with the County Committee on January 18, 2000, and explained that she believed that she was eligible for the PFC payment because she had received 100% of the advance payment, the bankruptcy discharge was granted before the PFC payment was due, she did everything she was advised to do by the bankruptcy trustee and the County Office, and she certified her 1999 crops. (Burt C.R. at 65.) On March 21, 2000, the County Committee unanimously

5

agreed that Ms. Burt was not eligible for the 1999 PFC payment because a succession in interest contract was not submitted before the August 16, 1999 deadline. (Burt C.R. at 53.) On March 22, 2000, the FSA initiated collection procedures against Ms. Burt for the $10,598.00 MLA payment. (McKown C.R. at 194-195; Burt C.R. at 25; 48.)

On June 14, 2000, Ms. Burt appealed the FSA's overpayment claim to the State Committee. (McKown C.R. at 197-199; Burt C.R. at 133-135.) On July 3, 2000, Mr. McKown appealed the denial of his payment to the State Committee. (McKown C.R. at 68-69.) Both cases were scheduled for a hearing before the State Committee on September 12, 2000. (McKown C.R. at 61; 63.) On September 29, 2000, the State Committee upheld the decision of the County Committee with respect to both cases. (McKown C.R. at 58-61; Burt C.R. at 158-161.)

On October 24, 2000, Appellants filed requests for reconsideration with the FSA State Committee on the grounds that the filing of the bankruptcy petitions did not create transfers, and if transfers were created by the mere filing of the petitions, Appellants did not know and had no reason to know that the action or advice of the FSA representative upon which they relied was improper or erroneous. (McKown C.R. at 53; 55; Burt C.R. at 163-165.) The State Committee denied the requests for reconsideration on November 16, 2000. (McKown C.R. at 44; 53; 134; Burt C.R. at 162.) Both Appellants requested mediation. (McKown C.R. at 131; Burt C.R. at 221.)

The New Mexico Agricultural Mediation Program mediated both cases on January 23, 2001 in Roswell. (McKown C.R. at 42.) Ms. Standifer appeared on behalf of the Agency. (McKown C.R. at 48-52; Burt C.R. at 213-217.) A "Confidential Memorandum of Understanding" was prepared that memorialized the mediator's proposed points. (*Id.*) The memorandum stated, *inter alia*, that the parties all acted under the assumption that they had fulfilled all necessary eligibility requirements,

6

there was no change in operation or ownership of the farms until after December 1999, and that both cases would be submitted to the FSA National Office for decision. (*Id.*) On February 13, 2001, a Request for Review and Recommendation was submitted to the National Office. (McKown C.R. at 45.)

On July 27, 2001, Diana Sharp, Acting Deputy Administrator for FSA Farm Programs, determined that Mr. McKown and Ms. Burt did not timely reaffirm the PFCs after filing bankruptcy petitions and receiving discharges. (McKown C.R. at 43; 223; Burt C.R. at 130.) On August 21, 2001, Appellants appealed to the National Appeals Division. (McKown C.R. at 116; Burt C.R. at 128; 194; 204.) On November 15, 2001, an evidentiary hearing was held before Hearing Officer Wendell Fennell. (McKown C.R. at 92-96; Burt C.R. at 182-186.) On January 3, 2002, Hearing Officer Fennell consolidated the two cases and reversed the Agency's decision to deny program payments to Appellants. (McKown C.R. at 156-161; Burt C.R. at 254-259.) In reaching his decision, Hearing Officer Fennell found that Appellants' bankruptcy filings did not transfer title to the farm acreage. (McKown C.R. at 157-158; Burt C.R. 256-257.) The Agency appealed. (McKown C.R. at 350-352; Burt C.R. at 422-424.)

On March 18, 2002, Nancy L. Smith, Acting Director of USDA's National Appeals Division (NAD) reversed the decision of Hearing Officer Fennell, on the basis that it was inconsistent with the laws and regulations of the Agency. (McKown C.R. at 302-306; Burt C.R. at 395-399.) Specifically, Acting Director Smith reasoned that the generally accepted interpretation of change of interest in a PFC used by the Agency in administering PFC contracts is that interest in the contract transferred to the bankruptcy estate when the bankruptcy is filed, that Appellants' PFCs terminated when they transferred their interests to the bankruptcy estates, and that the FSA denied the 1999 payments

because Appellants had transferred their interests during the contract period and had not succeeded in interest to the PFC. (McKown C.R. at 305; Burt C.R. at 398.) Acting Director Smith further determined that the terms of the CCC-478 Appendix clearly state that the contract will terminate if the producer or owner's interest in the crops or land is transferred. (*Id*.) Although the County Office incorrectly advised Appellants that the filing of an acreage report would maintain PFC payment eligibility, Appellants knew or had sufficient reason to know that the advice was erroneous. (*Id*.) Accordingly, Acting Director Smith determined that the Hearing Officer's decision was not supported by substantial evidence and reversed the lower decision. (McKown C.R. at 306.) The Acting Director's decision constituted the USDA's final determination. 7 U.S.C. § 6999.

Appellants filed their Complaint and Application for Judicial Review on June 24, 2002. On November 7, 2002, I directed Appellees to file the administrative record and set a briefing schedule. *See Olenhouse v. Commodity Credit Corp*., 42 F. 3d 1560, 1580 (10th Cir. 1994) (directing district court to process reviews of agency actions as appeals). The parties timely filed the administrative record and their briefs.

### III.   Jurisdiction.

Appellee argues that the Agency's decision is not subject to judicial review because the decision is committed to Agency discretion. The provisions of the APA are applicable "except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)-(2). Section 701(a)(2) "makes it clear that 'review is not to be had' in those rare circumstances where the relevant statute 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.' " *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (citations omitted). This is a non-waivable jurisdictional question. *See*

*Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1448 (10th Cir. 1994); *Selman v. United States*, 941 F.2d 1060, 1062 (10th Cir. 1991).

Appellants assert that the underlying regulation commits the determination of whether an owner or producer has violated the terms of a PFC contract to agency discretion. The applicable regulation provides that "[a] transfer (or change) in the interest of an owner or producer subject to a contract in the contract acreage covered by the contract shall result in the termination of the contract with respect to the acreage, unless the transferee or owner of the acreage agrees to assume all obligations under the contract." 7 C.F.R. § 1412.201 (1999).

Section 701(a)(2) excepts from judicial review only a very narrow range of agency decisions. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971). The Tenth Circuit has considered § 701(a)(2) on several occasions. *See, e.g., McAlpine v. United States*, 112 F.3d 1429 (10th Cir. 1997) (determining that denial of application to take land into trust status under Indian Reorganization Act reviewable); *Bd. of County Comm'rs of County of Adams v. Isaac*, 18 F.3d 1492, 1498 (10th Cir. 1994) (refusal to approve and partially fund construction of facilities for air cargo hub was unreviewable, as "reasonably necessary for air commerce" standard in statute does not provide the court with a justiciable standard of review). These cases establish that § 702(a)(2) precludes judicial review of agency action only where a court would have no meaningful standard against which to judge the agency's exercise of discretion. While the analysis usually focuses on the controlling statute, the standard can be derived from the agency's regulations. *McAlpine*, 112 F.2d at 1433.

In this case, the regulation states that a transfer in the interest shall result in the termination of the contract. 7 C.F.R. § 1412.201 (1999). This language is mandatory and not discretionary. Because the decision is not committed to agency discretion, Section 701(a)(2) does not apply.

9

Accordingly, the USDA's decision is subject to judicial review.

**IV.      Discussion.**

Section 706 of the Administrative Procedures Act (APA) reads as follows:

> Scope of Review . . . the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall --
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be
> > (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> > (B) contrary to constitutional right, power, privilege, or immunity;
> > (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> > (D) without observance of procedure required by law;
> > (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> > (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706 (2002).

The duty of a court reviewing agency action under the "arbitrary or capricious" standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d

1560, 1574 (10th Cir. 1994) (*quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983)). The reviewing court must determine whether the agency considered all relevant factors and whether there was a clear error of judgment. *Olenhouse*, 42 F.3d at 1575. Agency action will be set aside "if the agency relied on factors which Congress has not intended for it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Motor Vehicle Mfrs.*, 463 U.S. at 43.

The party challenging an agency action bears the burden of proving that the action was arbitrary and capricious. *AllCare Home Health, Inc. Shalala*, 278 F.3d 1087, 1089 (10th Cir. 2001). The reviewing court "'may not supply a reasoned basis for the action's action that the agency itself has not given.'" *Olenhouse*, 42 F.3d at 1575 (*quoting Motor Vehicle Mfrs.*, 463 U.S. at 43 (1983)). The arbitrary and capricious standard of review has been equated to the substantial evidence test. *Id.* (*citing Northwest Pipeline Corp. v. Fed. Energy Regulatory Comm'n*, 61 F.3d 1479, 1485 (10th Cir. 1995)). Although the standard of review is deferential, a decision "'would be arbitrary and capricious if the agency . . . entirely failed to consider an important aspect of the problem.'" *Kansas v. United States*, 249 F.3d 1213, 1228 (10th Cir. 2001) (*quoting Motor Vehicle Mfrs.*, 463 U.S. at 43).

Appellants argue that the final decision of the NAD was arbitrary and capricious and not in accordance with law. The applicable regulations provide that "[a] transfer (or change) in the interest of an owner or producer subject to a contract in the contract acreage covered by the contract shall result in the termination of the contract with respect to the acreage, unless the transferee or owner of the acreage agrees to assume all obligations under the contract." 7 C.F.R. § 1412.201 (1999).

11

The termination is effective on the date of the transfer or change. *Id*. A person may succeed to the contract if there has been a change in the operation of a farm, such as a foreclosure, bankruptcy, or involuntary loss of the farm after enrollment in a PFC. 7 C.F.R. § 1412.207(a)(3) (1999). A producer or owner must inform the county committee of changes in interest not later than August 1 of the fiscal year in which the change occurred. 7 C.F.R. § 1412.207(d) (1999).

The NAD followed the USDA interpretation of the regulations. The USDA interpreted these regulations so that PFC payments could be made to producers who filed bankruptcy petitions subject to certain conditions. In cases where the producers filed under Chapter 7, the program participant was required to reaffirm the contract after filing but before discharge. After discharge, the program participant could sign a successor in interest contract and be eligible. The cut-off date for signatures on valid PFC contracts for fiscal year 1999 was August 16, 1999. If a program participant had not reaffirmed the original PFC contract and had not executed a valid successor in interest contract prior to that date, the participant would not be eligible for future payments for fiscal year 1999. The CCC-478 Appendix tracks the language of the regulations and notifies PFC signatories that the PFC shall be terminated with respect to a producer or owner whose interest in the crops or land on the farm is transferred.

The NAD decision concluded that Appellants were ineligible for 1999 PFC or MLA payments because they did not reaffirm their PFCs after filing Chapter 7 bankruptcy petitions or execute successor in interest contracts before August 16, 1999. (McKown C.R. at 302-306; Burt C.R. at 395-399.) The NAD further determined that the CCC-478 Appendix clearly states that the PFC would terminate with respect to a producer or owner whose interest in the crops or land was transferred.

"An agency's interpretation of its own regulations is entitled to great deference and will be rejected only if it is 'unreasonable, plainly erroneous, or inconsistent with the regulation's plain meaning.'" *Lewis v. Babbitt*, 998 F.2d 880, 882 (10th Cir. 1993) (*quoting Bar MK Ranches v. Yuetter*, 994 F.2d 735, 738 (10th Cir. 1993)). In this case, the NAD's interpretation of USDA regulations is reasonable and consistent with the plain language of those regulations. There are no indications that the agency relied on factors which Congress did not intend for it to consider. The record demonstrates that the NAD considered Appellants' position and explained its decision in a manner consistent with the evidence.

The NAD's interpretation is also consistent with established bankruptcy law. Appellants acknowledge that the filing of a bankruptcy petition "changes the party that holds that interest." *See* Appellant's Brief at 12 (*citing In re Sanders*, 969 F.2d 591, 593 (7th Cir. 1992)). The commencement of a bankruptcy case creates an estate comprised of all legal or equitable interests of the debtor in property as of the filing of the petition. *See* 11 U.S.C. § 541(a)(1). The bankruptcy trustee succeeds to the same rights the debtor possessed in the property pre-petition. *Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487, 495 (3rd Cir. 1997). When Appellants filed their bankruptcy petitions, all of their legal and equitable interests transferred to their bankruptcy estates.

Appellants executed PFCs before they filed their bankruptcy petitions. When Appellants filed their bankruptcy petitions, Appellants' interests in the PFCs became the property of Appellants' bankruptcy estates. The transfers terminated the PFCs. 7 C.F.R. §§ 1412.201; 1412.207(a)(3) (1999). Appellants did not reaffirm or succeed to the PFCs before the August 16, 1999 cutoff. The NAD decision correctly determined that Appellants's PFC contracts terminated upon filing of the bankruptcy petitions, that Appellants did not reaffirm or succeed to the PFCs and that Appellants

were not eligible for PFC or MLA payments for fiscal year1999.

Appellants contend that the Agency's determination that they knew or had sufficient reason to know that the County Office's advice as to maintaining eligibility was erroneous. Ms. Standifer incorrectly advised Appellants that they need only file acreage reports to maintain their eligibility. The relevant regulation states:

> (a) Notwithstanding any other provision of the law, performance rendered in good faith based upon action of, or information provided by, any authorized representative of a County or State Farm Service Agency Committee, may be accepted by the Administrator, FSA (Executive Vice President, CCC), the Associate Administrator, FSA (Vice President, CCC), or the Deputy Administrator for Farm Programs, FSA (Vice President, CCC), as meeting the requirements of the applicable program, and benefits may be extended or payments may be made therefor in accordance with such action or advice to the extent it is deemed desirable in order to provide fair and equitable treatment.
> (b) The provisions of this section shall be applicable only if a producer relied upon the action of a county or State committee or an authorized representative of such committee or took action based on information provided by such representative. The authority provided in this part does not extend to cases where the producer knew or had sufficient reason to know that the action or advice of the committee or its authorized representative upon which they relied was improper or erroneous, or where the producer acted in reliance on their own misunderstanding or misinterpretation of program provisions, notices, or advice.

7 C.F.R. § 718.8 (1999).

The NAD observed that the terms of the CCC-478 Appendix clearly state that the contract will terminate if the producer or owner's interest in the crops or land is transferred. (McKown C.R. at 305; Burt C.R. at 398.) The NAD determined that, although Ms. Standifer incorrectly advised Appellants that the filing of an acreage report would maintain PFC payment eligibility, Appellants knew or had sufficient reason to know that the advice was erroneous. (*Id.*)

14

Appellants had received copies of the CCC-478 Appendix, which stated that "the PFC shall be terminated with respect to a producer or owner whose interest in the crops or land on the farm is transferred." (McKown C.R. at 81; Burt C.R. at 171.)  Under these circumstances, Appellants knew or had sufficient reason to know that the advice of Ms. Standifer upon which they relied was erroneous under 7 C.F.R. § 718.8(b).  The NAD's interpretation of its regulations is reasonable and consistent with the plain language of the regulations.  The NAD considered Appellants' position and explained its decision in a manner consistent with the evidence.  The final agency decision was not arbitrary or capricious.

Appellants maintain that their interests in the PFCs did not transfer to the bankruptcy estate because they listed "crop disaster payments" on their bankruptcy schedules as exempt under 11 U.S.C. § 522(d)(5).  In 1999, Section 522(d)(5) allowed a debtor to exempt his or her aggregate interest in any property, not to exceed in value $850.  *See* 11 U.S.C. § 522(d)(5) (1999).  Both Mr. McKown and Burt listed several items of property with stated values of more than $850 on their schedules under § 522(d)(5).  Thus, the aggregate value of their claimed exemptions exceeded the limit on the exemption.  Additionally, the USDA regulations do not create an exception for claimed bankruptcy exemptions, but apply to all producers or owners who file for bankruptcy.  *See* 7 C.F.R. §§ 1412.201; 1412.207(a)(3) (1999).  Consequently, Appellant's position is unsupported.

Appellants argue that the parties stipulated that there was no change in operation or ownership of the farms until after December 1999.  During the January 23, 2001 mediation, a "Confidential Memorandum of Understanding" was prepared memorializing the mediator's proposed points. (McKown C.R. at 48-52; Burt C.R. at 213-217.)  One of the points stated that there was no change in operation or ownership of the farms until after December 1999.  However, Appellants

15

readily acknowledged that Ms. Standifer, the only Agency representative at the mediation, had no settlement authority. (McKown C.R. at 47.) Furthermore, the mediation was unsuccessful and did not result in a binding settlement agreement. Under these circumstances, the alleged stipulation was invalid and did not bind the Agency.

The USDA has articulated a satisfactory explanation for its action, including a rational connection between the facts found and the decision rendered. *See Kansas v. United States*, 249 F.3d at 1228. Additionally, Appellee considered all aspects of the issues in reaching its final decision. *Id*. Appellants have failed to meet their burden of proving that the final agency action was arbitrary and capricious. *See* 5 U.S.C.§ 706(2)(A); *AllCare Home Health, Inc.*, 278 F.3d at 1089. Accordingly, the USDA's final decision should be affirmed.

## V.   Conclusion.

Upon review of the administrative record, the Court has determined that the final decision of the USDA should be affirmed.

**WHEREFORE,**

**IT IS ORDERED** that the final decision of the USDA is affirmed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**
**BY CONSENT AND DESIGNATION**